IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Thomas E. Smith, | : | |
| Plaintiff | : | Civil Action 2:07-cv-828 |
| v. | : | Judge Graham |
| Michael J. Astrue, | : | Magistrate Judge Abel |
| Commissioner of Social Security, | | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Thomas E. Smith brought this action under 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying his application for disability benefits. (Doc. 4.) This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment. (Docs. 14 and 18.) For the reasons below, it is **RECOMMENDED** that Plaintiff's motion be **DENIED** and the decision of the administrative law judge be **AFFIRMED**.

<u>Summary</u>

Plaintiff Thomas E. Smith maintains that he has been disabled since June 24, 1994. (R. 765.) He was then 43 years old. (*Id*. at p. 423.) The ALJ found that Smith's severe impairments included recurrent dislocation of the left shoulder, derangement of the left knee with residuals of surgery, degenerative joint disease in the thoracic spine, residuals of compression fractures of the dorsolumbar spine, and chronic cervical strain. The ALJ found that, as of December 31, 1999, the last date he was insured for disability insurance benefits, Plaintiff Smith retained the residual functional capacity to perform a

reduced range of work having sedentary exertional demands and concluded that Smith was not disabled.  Plaintiff, *pro se*, argues that he received defective hearing tapes, the ALJ did not take into account the amount of medication he has to take, and physical functional assessments are nonsensical because he cannot do work activities without difficulty and pain.

**Procedural History and Prior Filings**

Plaintiff Thomas E. Smith filed an application for disability insurance benefits on February 22, 2001, alleging that he became disabled on June 24, 1994.  (R. 423.)  The application was denied initially, upon reconsideration, and by a May 29, 2003 ALJ decision.  (See *id*. at pp. 379-384.)  The Appeals Council vacated and remanded the May 29, 2003 decision for an evaluation of Smith's musculoskeletal impairments under the new listings effective in February 2002.  (*Id*. at pp. 387-388.)  Upon remand, the administrative law judge ("ALJ") issued a new unfavorable decision on September 18, 2003.  (*Id*. at pp. 729-735.)  The Appeals Council denied Smith's request for review (*id*. at p. 176), but the Commissioner later agreed to a remand  (*id*. at pp. 711, 715-718).  A hearing was held on July 13, 2005, at which Smith appeared and testified before ALJ David Redmond.  (R. 763-778.)  Smith was not represented by an attorney.  (*See id*.)  A vocational expert, William Braunig, also testified.  (*Id*.)  On November 17, 2005, the ALJ issued a decision finding that Smith was not disabled within the meaning of the Social Security Act through December 1999, the date he was last insured.  (*Id*. at p. 701.)  The Appeals Council held that there was no basis to disturb the ALJ's ruling.  (*Id*. at p. 678.)

The ALJ's decision is the final decision of the Commissioner of Social Security

("Commissioner").

**Background**

**Age, Education, and Work Experience.** Thomas E. Smith was born on July 12,

1950, and was 49 years old at the end of 1999 when he was last insured for disability

insurance benefits. (R. 423, 767.) He has a high school education. His past work

includes that of a millwright. (*Id*. at p. 774.) Plaintiff worked in that designation until

the alleged disability onset date. (*Id*. at p. 760.)

**Plaintiff's Testimony.** Plaintiff Thomas E. Smith appeared and testified at the

July 13, 2005 hearing. The record also contains the transcript of a January 4, 2000

hearing. The January 4, 2000 hearing relates to a prior application filed for disability

benefits. Smith gave the following testimony, as summarized by the ALJ, at that

hearing:

> The claimant testified that he is disabled due to pain in his neck, back, left
> knee, and left shoulder, carpal tunnel syndrome, asbestosis, and
> depression. He has arthritis in his back and neck. The pain in his back is
> constant, but the pain in his neck comes and goes and causes headaches.
> He underwent arthroscopic surgery for his left knee, but it still gives out
> on occasion. He cannot raise his left arm above the shoulder level. He
> stated that he has no strength in his right elbow or wrist because of carpal
> tunnel syndrome but that he is able to use buttons and zippers and pick
> up coins. He has not received any treatment for this alleged impairment.
> His asbestosis causes him to "cough up things," and he cannot tolerate
> exposure to respiratory irritants. He stated that he has depression but that
> medication controls this alleged problem.
>
> He stated that he is able to walk approximately 50 to 60 yards at a time,
> stand for 10 to 15 minutes at a time, and sit for 30 minutes at a time. He is

3

able to use his arms, hands, and fingers and able to lift a gallon of milk without difficulty. He testified that he smokes one pack of cigarettes per day and is able to feed, groom, and dress himself. He cooks, washes dishes, sweeps, washes clothes, and goes grocery shopping. He drives daily and without difficulty. He also frequently receives visits from family members.

(R. 693.)  The administrative law judge also summarized Smith's testimony from the

July 13, 2005 hearing as follows:

[H]e lived alone and had done so for the past 12 years. He last worked on June 24, 1994, in construction as a millwright. He stopped working on that date because he fractured his lumbar spine in a motor vehicle accident. He had not attempted any work since then. He said that he could not work due to the compression fracture of his lumbar spine. He also had residuals of surgery on his left knee because of multiple fractures in a motorcycle accident in 1980 when he also injured his jaw, hand, and right knee. He had orthopedic surgery on his left knee a year before the accident that injured his back. The knee surgeon took out too much soft tissue, and the bones rub together. He had filler material injected into the knee that helps, but he may need a knee replacement in the future. He had a lifting injury in 1988 and strained the vertebra at levels C5, 6, and 7 causing spondylosis. He had headaches since then and has been taking medication for headaches since 1989. He has had epidural and other types of injections for his back impairment, and he is scheduled to have more but has to go to Cincinnati now, and the commute is difficult for him. He said that it is possible he may have to have fusion surgery in the future for the back.

When asked how long he could stand and walk, the claimant basically stated that he could not sit, stand, or walk for long.

(R. 693.)

**Medical Evidence of Record.**  The ALJ's decision and the transcript submitted to

the Court contain detailed information of Plaintiff's medical conditions.  This Report

and Recommendation would only provide an overview of the medical evidence of

record.

**Physical Impairments.** Plaintiff Thomas E. Smith's physical impairments include problems with his left knee. Smith stated that he injured his left on June 6, 1991, while welding. (R. 115.) He was seen in February 1993 at Ohio University Osteopathic Medical Center. (*Id*.) Smith was assessed with a tear of the medial meniscus, left knee. (*Id*.)

In June 1994, Smith was treated at the Veteran's Memorial Hospital, Inc. after a car accident. (R. 117.) A radiology report noted recent healing compression fractures of the superior vertebral end plates of the body of D12 and L1, slight scoliosis of the thoracolumbar spine with convexity to the right, and slight narrowing of the intervertebral disc space of D12 and L1. (*Id*. p. 119.) Smith was assessed with a spinal fracture. (*Id*. at p. 120.)

On July 21, 1994, Smith appeared for an asbestos related physical examination at Diagnostic Medical Center. (R. 126.) Smith complained of shortness of breath occasionally for the last five years and coughs for the last ten years. (*Id*.) He denied any chest pains. (*Id*.) Smith had normal breath sounds and no rales or wheezing. (*Id*.) The chest x-ray findings were consistent with an asbestosis related disease. (*Id*. p. 127.)

On October 25, 1994, Plaintiff reported to Dr. Thaler for an evaluation of his back injuries. (R. 141.) Smith complained that he cannot sit without discomfort and that walking and riding in a car bother him. (*Id*.) He denied leg pain, numbness, or weakness. (*Id*.) His back motion showed that he had localized tenderness throughout

5

the upper lumbar vertebra, but there was no evidence of muscle spasm. (*Id*.) At a December 6, 1994 evaluation, Smith continued to complain of pain on the right side of his back. (*Id*. p. 140.) However, Dr. Thaler opined that there is no objective evidence of impairment. (*Id*.) Dr. Thaler also noted that Smith asked him to fill out some paperwork so that he could receive pension. (*Id*.) After referring him for a functional capacity assessment, Dr. Thaler refused because he was unable to find that Smith was precluded from engaging in any employment for wage or profit. (*Id*. at pp. 138-139.)

In March 1995, an x-ray report of Smith's lumbar spine noted a compression fracture and related deformity of L1 vertebral body was seen, but no other unusual findings. (R. 276.) It also noted that it appeared to be an old injury. (*Id*.) Smith's March 1995 chest x-ray was normal. (*Id*. p. 277.) A related leg examination noted that Smith's right lower extremity might be 2-3 mm longer than his left, and that the difference may not be of much clinical significance. (*Id*.)

On May 30, 1995, a physician evaluated Smith. (See R. 143-146.) The physician opined that Smith could lift up to 5 pounds frequently, occasionally lift up to 10 pounds, sit for 2 hours at a time and 4 hours total in an 8-hour workday, stand for 1.5 hours at a time and for 4 hours total in an 8-hour workday. (*Id*. at p. 144.) The physician also opined that Smith could occasionally bend, squat, and reach above shoulder level, but could never crawl or climb. (*Id*.)

A January 4, 1996 MRI of Smith's lumbar spine disclosed a compression fracture of L1, which appeared to be old. (R. 286.) The MRI report noted that there was no

6

significant disc bulging or disc herniation in the lumbar region. A February 1, 1996 x-ray of the cervical spine was unremarkable. (*Id*. p. 287.)

On February 6, 1996, Dr. William D. Monger examined Smith for the Bureau of Disability Determination. (R. 150.) Smith reported pain in his left shoulder, which ran up to his neck, left knee, and right elbow. (*Id*.) Upon physical examination, Dr. Monger noted that Smith could walk without the use of any aid and could go on his heels and toes. (*Id*.) Smith's back was not tender, his curves were normal, and his range of motion was full. (*Id*.)

Dr. Monger opined that Smith could occasionally lift and/or carry 10 pounds, stand for 10 minutes without interruption up to 1 hour total in an 8-hour workday, and sit for 15 minutes without interruption up to a total of 2 hours in an 8-hour workday. (*Id*. p. 156.) Dr. Monger further opined that Smith could never climb, balance, stoop, crouch, kneel, or crawl, and his ability to reach, handle, and push/pull is affected. (*Id*.)

In December 1998, Dr. T. Keith Toledo examined Smith for the Bureau of Disability Determination. (R. 304.) Smith's chief complaints included back problems, arthritis, neck problems, left shoulder pain, asbestosis of the lung, and gout. (*Id*.) Upon examination, Dr. Monger noted tenderness in Smith's left shoulder, no tenderness in the elbows or wrists, grip strength at 5/5, slight crepitus of both knees with pain and palpation of both knees, but there was no apparent warmth, tenderness, redness, laxity, or swelling, and the ankles and feet were not tender, red, or swollen. (*Id*. at p. 307.) Examination of the dorsolumbar spine revealed normal curvature, there was no pain or

7

paravertebral spasm, straight leg raising test was normal to 90 degrees bilaterally, Smith was able to stand on one leg without difficulty, and there was no tenderness to palpation of the hips.  (*Id*.)  Dr. Monger opined that Smith's ability to perform activities such as bending, stooping, lifting, carrying, traveling, or walking appeared mildly impaired.  (*Id*. p. 308.)

On January 20, 1999, Dr. Edmond W. Gardner, a state agency physician, reviewed the medical record.  He opined that Smith could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for a total of 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday.  (R. 315.)  He also opined that Smith's had no limitation on his ability to handle, finger, and feel, but his ability to reach in all directions was limited.  (*Id*. p. 317.)  He further opined that Smith could stoop and crouch, but he was limited in his ability to climb ladders, ropes, or scaffolds.  (*Id*. p. 316.)  On March 23, 1999, Dr. Coccia, another state agency physician, indicated that he agreed with Dr. Gardner's review.  (*Id*. p. 321.)

A June 22, 1999 CT scan of Smith's lumbar spine was normal.  (R. 617.)  Also, a February 16, 2000 CT scan revealed minimal degenerative changes in the osseous structures at C5-6 and C6-7 levels.  (*Id*. p. 610.)  The report also noted that no definite herniated disc or other soft tissue abnormality was seen.  (*Id*.)

**Vocational Expert.**  William Braunig, a vocational expert, testified at the hearing. (R. 773.)  The ALJ asked Braunig to assume a person of Smith's age, education, and work experience.  He also asked Braunig to assume that the person would be limited to

activity at the sedentary exertional level, that he would need latitude to sit, stand, or change positions at will, and that he would not be able to do any overhead lifting and would be limited to simple tasks which would require less than an average pressure. (*Id*. at p. 774.)  On these assumptions Braunig testified that such a person could perform 5,700 jobs including surveillance monitor (350), charge account clerk (225), and microfilm document preparer (500).  (*Id*.)

**Administrative Law Judge's Findings**. The ALJ found that:

1. The claimant satisfied the special earnings requirements of the Act on June 24, 1994, the alleged disability onset date, and continued to satisfy those requirements through December 1999.

2. The claimant did not perform any substantial gainful activity at any time relevant to this Decision.

3. The claimant, through the date last insured, had the following "severe" impairments: recurrent dislocation of left shoulder; internal derangement of the left knee with residuals of surgery; degenerative joint disease in the thoracic spine; residuals of compression fractures of the dorsolumbar spine; and chronic cervical strain.  However, he did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's subjective complaints are not totally supported by the evidence of record.

5. The claimant, through the date last insured of December 1999, had the following restrictions: lifting no more than 10 pounds; the option to alternate between sitting and standing as needed; no overhead lifting; and only simple tasks (20 CFR 404.1545).

6. The claimant was unable to perform his past relevant work.

7. The claimant, through the date last insured, was a "younger individual."

8. The claimant has a high-school education.

9. The claimant does not have "transferable" skills within the meaning of the Social Security Act.

10. If the claimant retained the residual functional capacity to perform the full range of sedentary work, based on his vocational profile, section 404.1569 of Regulations No. 4, and Vocational Rule 201.21, Table No. 1 of Appendix 2, Suppart P, Regulations No. 4, would direct a finding that he is "not disabled."

11. Although the claimant's functional limitations do not allow him to perform the full range of sedentary work, using the above-cited rule as a framework for decisionmaking, there is a significant number of jobs in the regional economy which the claimant can perform: 5,700 unskilled, sedentary jobs such as surveillance systems monitor, charge account clerk, and microfilm document preparer. A proportionate number of such jobs exist in the national economy as well.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through his date last insured of December 1999 (20 CFR 404.1520(g)).

(R. 701-702.)

## Standard of Review

This Court has jurisdiction to review the Commissioner's decisions pursuant to 42 U.S.C. §§405(g) and 1383(c)(3). Judicial review is limited to a determination of whether the decision is supported by substantial evidence, and whether the Commissioner employed the proper legal standards. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir.1994) (internal citations omitted). Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id*; *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (internal citations omitted).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (internal citations omitted).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985) (citing *id*.).

## Analysis

Plaintiff Thomas E. Smith's brief raises three arguments:

- Plaintiff received defective tapes of the July 2005 hearing;

- The ALJ did not take into consideration the amount of medication Plaintiff takes;

- The discussion about the ability to stand, sit, and walk is "nonsense" because Plaintiff could do all these things, but not without great pain and difficulty.

(Doc. 14, pp. 1-2.)  Each of these arguments will be considered separately below.

**Defective tapes.**  Judicial review of the ALJ's decision is limited to a determination of whether the decision is supported by substantial evidence, and whether the Commissioner employed the proper legal standards.  *Cutlip*, 25 F.3d at 286.

11

A transcript of the July 13, 2005 hearing is in the record.  (See R. 763-778.)  The record

before the Court also indicates that the Appeals Council specifically sent Smith a second

copy of the hearing tape.  (*Id*. p. 686.)  Further, Smith made no effort to explain how the

alleged receipt of defective hearing tapes provides some basis for reversing the ALJ's

decision.

      **Medication.**  Likewise, Smith's contention that the ALJ never took into

consideration the amount of medication Plaintiff takes does not provide a basis for

reversing the ALJ in the current context.  The ALJ is not required to restate every piece

of medical evidence in the record.  *Wheeler v. Apfel*, 224 F.3d 891, 896 n.3 (8th Cir. 2000).

The ALJ's decision does contain a discussion of the medical evidence of record,

including Smith's pain.  (See R. 694-696.)  Also, given that Smith testified that his

medication helped his pain, the contention appears irrelevant.

      **Ability to stand, sit, and walk.**  Smith's contention that the ability to stand, sit,

and walk is "nonsense" because he can do these things, but not without difficulty, does

not state an error.  Plaintiff's case was decided at step five of the five-step sequential

evaluation process.  See 20 CFR § 404.1520(a) (discussing the five-step sequential

evaluation procedure).  At step five, the Administration considers the assessment of a

claimant's residual functional capacity and his age, education, and work experience.  20

CFR § 404.1520(a)(4)(v).  Plaintiff's "residual functional capacity is the most [he] can still

do despite [his] limitations."  20 CFR § 404.1545(a)(1).  A claimant with physical and/or

mental limitations may or may not be entitled to disability benefits.  Judicial review is

limited to a determination of whether the ALJ's decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Cutlip*, 25 F.3d at 286. I cannot say that the ALJ employed an incorrect legal standard.

Accordingly, it is **RECOMMENDED** that Plaintiff's motion be **DENIED** and the decision of the administrative law judge be **AFFIRMED**.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


       s/Mark R.  Abel       
United States Magistrate Judge